UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA       :
      :
      - v -       :
      :       **22 Cr. 73 (JFK)**
**COREY SAMERSON,**       :
      Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## SENTENCING MEMORANDUM
## ON BEHALF OF COREY SAMERSON

DAVID PATTON, ESQ.
Federal Defenders of New York
Attorney for Defendant
**COREY SAMERSON**
52 Duane Street, 10th Floor
New York, NY 10007
Tel.: (212) 417-8728
**Amy Gallicchio**, Esq.
Of Counsel

TO:       Damian Williams, Esq.
      United States Attorney
      Southern District of New York
      1 St. Andrew's Plaza
      New York, NY 10007

Attn:       Madison Reddick Smyser, Esq.
      Matthew J. C. Hellman, Esq.
      Assistant United States Attorneys

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

August 25, 2022

**BY ECF and EMail**

Judge John F. Keenan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   **Re:** **United States v. Corey Samerson**
     **22 Cr. 73 (JFK)**

Dear Judge Keenan:

  At 23 years old, Corey Samerson is a young man in crisis. For the second time in just over three years, he faces a federal judge for sentencing after having committed a series of commercial robberies. These robberies occurred approximately two months following his release from prison after serving a 48-month sentence previously imposed by the Honorable Alison J. Nathan. As a result, Mr. Samerson also faces a violation of supervised release ("VOSR").

  On June 30, 2022, Mr. Samerson pleaded guilty to two counts of Hobbs Act robbery, charged in Counts Two and Four of the Indictment. Pursuant to a plea agreement, the parties stipulated that the applicable guideline range is 77 to 96 months. Regarding the VOSR, on the date of sentencing and with the consent of the Court, Mr. Samerson intends to admit to Specification 2 contained in the Violation Report, charging him with committing a Hobbs Act robbery on January 3, 2022, consistent with the charges contained in Count Two of the indictment. The applicable Guideline range for the VOSR is 18 to 24 months.

Judge John F. Keenan                                    August 25, 2022
<u>United States v. Corey Samerson</u>
**22 Cr. 73 (JFK)**

Mr. Samerson recognizes the seemingly indefensible and inexcusable nature of his predicament.  And he understands the Court is surely to impose an incrementally greater sentence than previously imposed by Judge Nathan. Therefore, at the time of sentencing, I will ask the Court to sentence Mr. Samerson to no more than 60 months for the robbery conviction and no additional time for the VOSR.  I submit that a total sentence greater than 60 months would be excessive and greater than necessary given the circumstances of this case, Mr. Samerson's unique personal history and characteristics and his continuing need for mental health and substance abuse treatment.

Below are the § 3553 factors that support of the requested sentence.

**<u>The Need for Mental Health and Substance Abuse Treatment</u>**

Attached to the sentencing memorandum submitted to Judge Nathan, and resubmitted here as Exhibit A, is a neuropsychological evaluation of Mr. Samerson prepared by Dr. Elise Caccappolo, PhD, Director of Neurophysiology Service and Associate Professor of Neuropsychology at Columbia University.  Dr. Caccappolo found that, although never formally diagnosed, Mr. Samerson's behaviors in childhood and adolescence suggest that symptoms of a mental health condition had been present—but undiagnosed—for many years prior.  She concluded that he exhibited the symptoms of a mood disorder such as bipolar disorder or cyclothymia and that his substance abuse most likely developed as a method of self-medication. Dr. Caccappolo opined that, "As a result Corey developed a personality style that was notable for poor impulse control and a need for instant gratification in the wake of frustration and mood changes."   Exhibit A, at 4.

Dr. Caccappolo concluded that the risk of recidivism can be minimized or negated with appropriate interventions such as psychopharmacological and substance abuse treatment.  <u>Id</u>.

2

Judge John F. Keenan                                          August 25, 2022
United States v. Corey Samerson
**22 Cr. 73 (JFK)**

Judge Nathan remarked before imposing her sentence, "Mr. Samerson's actions here are surely related to his undiagnosed mental health issues and his use of drugs, perhaps as treatment for that, and drug addiction. As many of my colleagues and I in other cases have observed, the need to provide mental health and substance abuse treatment is and should be a driving and paramount factor in deciding what sentence to impose." See Sentencing Transcript, 18:7-13, ECF No. 47.

Needless to say, while Mr. Samerson served his prior sentence, the Bureau of Prisons ("BOP") provided none of the interventions recommended by Dr. Caccappolo and as predicted, Mr. Samerson did not get the treatment he desperately needed while in the custody of the BOP.  In fact, he received no mental health or substance abuse treatment at all.  Furthermore, he was incarcerated during the height and the entirety of the coronavirus pandemic and spent much of his 48-month sentence locked in a cell and isolated.

Mr. Samerson went to jail a 19-year-old with a serious drug addiction and untreated mental health issues, and he emerged as a 22-year-old with the same problems.  Mr. Samerson writes in his letter to the Court, "I realize now that when I came home, in some ways I was even worse off than I had been before. During my last incarceration, I went through multiple traumatic experiences, too numerous to name. I was 19 years old and around convicted killers, and it affected my psyche even more. I saw many people get stabbed, sexually assaulted, and commit suicide. There was one incident in November 2018 where I myself got stabbed four times. But the incident that scared me the most was during Covid-19, when I was falsely diagnosed for diabetes at Allenwood and administered insulin. I was stressed out and worried with no information about the disease. During the Covid lockdown, I felt super hopeless and was frequently denied showers for more than a week. I couldn't even speak to my family to let them know I was ok or find out if they were

Judge John F. Keenan                                        August 25, 2022
United States v. Corey Samerson
**22 Cr. 73 (JFK)**

ok. I understand jail is not supposed to be fun, but cruel and unusual punishment is a different thing." See Exhibit B.

## Personal History and Characteristics

I refer the Court to the sentencing memorandum and letters of support previously submitted to Judge Nathan, ECF No. 34, and the PSR for a thorough description of Mr. Samerson's personal history and characteristics. Attached to this submission are additional letters from friends and loved ones, all of whom attest to Mr. Samerson's intelligence, talent and potential. See Exhibits C to N. They also describe his charisma, kindness and generous spirit. And most importantly, the letters reveal Mr. Samerson's love for and devotion to his six-year-old daughter.

Many of Mr. Samerson's loved one's regret that they did not know how much he was suffering inside or hear his cries for help before it was too late. His cousin, Crystal Peters, a lawyer and entrepreneur, writes, "Corey has limitless potential and a community that has painfully reckoned with their own shortcomings. In reading these letters, I am sure you may wonder how someone with such great resources and connections could wind up in this predicament. Despite our collective professional accomplishments, Corey's rebellion may have dissipated sooner if we - all of the principals, educators, lawyers, and relatives in his life - heard his cries as something other than teenage angst". Exhibit C. His friend, Tydell Brown, reflects, "When he came home last time, he bottled up all the pressures and negative thoughts he was having and didn't share them with anyone. I had no idea how much he was struggling, and eventually, those feelings came out in a negative way." Exhibit E. His mother laments, "I later learned that he had expressed to his friends that he was unraveling and would cry on the phone with her at nights. I wish he had shared his emotional distress with me." Exhibit F.

Most poignant among the letters are those of his parents, John and Louise Samerson. His mother writes, "I would say that my heart is broken. My heart is

4

Judge John F. Keenan                                        August 25, 2022
<u>United States v. Corey Samerson</u>
**22 Cr. 73 (JFK)**

broken because never in my wildest dream did I think that any of my children would go to jail and I certainly did not expect this to happen twice." Exhibit C. His father writes, "I am experiencing great sadness, shame, embarrassment, regrets, confusion, frustration, disappointment, but also a sense of hopefulness as I prepare this letter of support for my son . . . I am equally hurt, distressed and very disappointed that we have to go through this process for a second time." Exhibit D.

Despite their heartache and disappointment, his parents remain attentive and supportive. They plead for help for their son and worry from experience, that the Bureau of Prisons will fail again to provide him what he needs. Mr. Samerson's parents are successful professionals and will make sure that this time their son gets the help he needs so that he can realize his full potential. His father closes his letter with the following, "I am assured that I do not have a career criminal as my son but a young man who will use his mistakes to turn around and do great things to benefit our society as we provide him with the appropriate medium to do so." <u>Id</u>.

## **Nature and Circumstances of the Offense**

When Mr. Samerson was sentenced in 2019, he wrote to Judge Nathan, "I want help, I know I need help. Here I can't run, can't numb. I have to sit in my mind and face it, I'm happy that's the circumstances so things can actually change. I'm tired of being depressed and not being able to look in the mirror. I want to be able to be proud of what I do, be able to look down at my daughter and see her smile at me because I'm a good father. My problem is drugs. I did this to get drugs and to get some money for my daughter; but I wouldn't have been so far behind if I wasn't using. I ask that you please give me some help and a sentence that sets me free, spiritually and mentally." Exhibit B.

Mr. Samerson makes no excuse for his conduct and, in his letter to Your Honor, tries his best to explain how he ended up in the same situation he was years ago. He writes, "During my last incarceration, I did not receive mental health and

Judge John F. Keenan                                    August 25, 2022
<u>United States v. Corey Samerson</u>
**22 Cr. 73 (JFK)**

drug abuse treatment, although I looked forward to it. Most programs were suspended because of Covid. I was also not eligible for RDAP because of the nature of my conviction. I looked forward to mental health treatment because ever since I was young, there are times I go through where I get sad for no reason. And I realize now that I would always try to fix those bad feelings by getting high. My mental health issues and drug issues go together. When I came home after my last case, I suddenly felt like I was in the same situation as before. I did not know what to do, and I quickly became overwhelmed. I felt like I did not have any tools to cope with what I was going through." <u>Id</u>.

When he came home from prison, he was poorly equipped mentally to handle the pressures and personal and financial demands that came with his freedom.  And so, he turned again to drugs to self-medicate and with that came poor judgment and reckless conduct.

Though his conduct is inexcusable, it is important to note that no one was hurt in the robberies admitted to by Mr. Samerson or those determined to have been committed by him.   His use of a bb gun demonstrates that he had no intention to hurt anyone.  Mr. Samerson recognizes that though he never intended to hurt anyone, his actions frightened the victims of the crimes.   He writes with remorse, "I think about those people in the stores, who probably were scared for their lives in those moments. I know from seeing violence happen to other people and to me that even the fear that something is going to happen to you can mess you up. I want to apologize to those people, and hope they can forgive me." <u>Id</u>.

**<u>The Need for the Sentence Imposed</u>**

Section 3553(a) of Title 18 of the United States Code mandates that the Court impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." § 3553(a).   While the Court must calculate the applicable Sentencing Guidelines range, "[t]he Guidelines are not only not

Judge John F. Keenan                                    August 25, 2022
United States v. Corey Samerson
**22 Cr. 73 (JFK)**

mandatory on sentencing courts; they are also not to be presumed reasonable."
Nelson v. United States, 555 U.S. 350, 352 (2009). Although the guidelines
recommend imprisoning Mr. Samerson for a period of 77 to 96 months and an
additional sentence for the VOSR, I submit that a total sentence of no more than 60
months adequately addresses the conduct to which Mr. Samerson pleaded guilty
and the violation of the Court's trust.  This sentence is appropriate in light of Mr.
Samerson's personal history and characteristics, his unaddressed need for mental
health and substance abuse treatment and in consideration of the harsh conditions
of confinement he has already endured during his eight months of detention and
those that are likely to follow during these challenging times.

       In addition to the nature and circumstances of the offense and the history
and characteristics of the defendant, Section 3553(a)(2) requires the Court to
consider the need for the sentence imposed to punish, deter, incapacitate and
rehabilitate.

       Regarding punishment, I submit that a term of incarceration greater than 60
months will not better serve the aforementioned goals of sentencing.  Sixty months
will be sufficiently punishing given the current conditions of confinement in the
Bureau of Prisons nationwide.  And 60 months will be sufficiently incapacitating.
Furthermore, regarding the VOSR, Mr. Samerson has already served hard time for
the underlying offense.  The dangerous conditions that existed at the time of his
prior incarceration could not have been foreseen at the time Judge Nathan imposed
her sentence. During Mr. Samerson's incarceration at Allenwood FCI, the rates of
COVID infections soared and, like so many other inmates, he suffered immensely
from the resulting dehumanizing restrictions imposed by the BOP nationwide.

       Currently, Mr. Samerson has endured eight grueling months of detention at
the MDC characterized by harsh restrictions and seemingly perpetual lockdowns
resulting in isolation and prolonged separation from loved ones.   By now the Court

Judge John F. Keenan                                  August 25, 2022
<u>United States v. Corey Samerson</u>
**22 Cr. 73 (JFK)**

is well aware of the punitive and restrictive conditions under which inmates at the
MDC have been detained during the life of the coronavirus pandemic.  Although,
this time, Mr. Samerson is not in custody during the height of the pandemic, he has
been incarcerated for the life of the new surge of infections due to the Omicron
variant.  Furthermore, he experienced the harsh and punitive month-long national
BOP lockdown initiated on January 31, 2022, following a violent event that
occurred at a high security prison in Texas.  In June of this year, the facility was
again locked down when authorities searched for a firearm that was rumored to
have been smuggled into the MDC. And in August, a former correctional officer was
charged in federal court with smuggling narcotics and other contraband into the
MDC.  See  https://www.justice.gov/usao-edny/pr/former-correctional-officer-
charged-smuggling-contraband-brooklyn-federal-jail.  The MDC is a dangerous
environment and in a state of dysfunction.

     It is widely recognized that "COVID-19 has taken a mental toll on all inmates
from minimum security camps to high security US Penitentiaries. Since March
2020, many prisoners have been confined to their cells, have had limited contact
with family (social visits suspended in most locations), restricted programs and
restricted recreational activities. The emergence of the Omicron throughout every
BOP institution is further aggravating the situation."[1]  Courts in this district
routinely take harsh conditions of confinement into account under § 3553(a). <u>See,
e.g.</u>, <u>United States v. Ozols</u>, 16 Cr. 692 (JMF) (giving defendant credit at sentencing
for what he endured at the MDC during an eight-day blackout); <u>United States v.
Serrano</u>, 18 Cr. 393 (LAK) (same).

     To quote Judge Engelmayer, "Prison is supposed to be punishment, but it is
not supposed to be trauma of that nature or close.  <u>See United States v. Aracena De</u>

---

[1] https://www.forbes.com/sites/walterpavlo/2022/02/02/federal-bureau-of-prisons-on-
national-lockdown-after-deadly-fights-at-usp-beaumont/?sh=5ecb25e95af2

Judge John F. Keenan                                                   August 25, 2022
<u>United States v. Corey Samerson</u>
**22 Cr. 73 (JFK)**

<u>Jesus</u>, 20 Cr. 19 (PAE) (S.D.N.Y. July 1, 2020), ECF No. 27 at 36-37.  Mr. Samerson
must, of course, be held responsible for his actions but when fashioning a sentence, I
ask the Court to take into consideration the conditions of confinement he has had to
endure and will likely continue to endure in the future.

Regarding deterrence, a sentence of 60 months, likewise, is sufficient to deter
Mr. Samerson from engaging in future criminal conduct.  Sixty months is a
significant amount of time for this 23-year-old and certainly enough time to send a
strong message to others of the consequences of similar behavior.

More than punishment by lengthy imprisonment, Mr. Samerson needs
rehabilitative services.  § 3553(a)(2)(D).  He continues to need substance abuse and
mental health treatment which we know, from Mr. Samerson's own experience, the
Federal Bureau of Prisons ("BOP") is ill-equipped to provide.  Regardless of what
sentence the Court imposes, Mr. Samerson asks that the Court order the BOP to
provide him with what Dr. Caccappolo recommended 3 ½ years ago, a program of
therapeutic support to include psychiatric treatment and medication.

**<u>Plans For the Future</u>**

Mr. Samerson is a young man at a critical point in his life as he again faces
sentencing in federal court.  He recognizes that the Court will impose a significant
sentence but asks that he be allow serve that sentence at a facility where he can
gain a trade and receive mental health and substance abuse treatment. He writes,
"I realize that I need help. I am thinking anew. My daughter needs me and I have a
lot of innovative ideas to help advance society. Please look at my situation and the
factors that led to my downfall, and please help me to never be back in that
situation. I am not making excuses, and I completely understand I violated the law.
But please give me another chance." Exhibit B.

Judge John F. Keenan                                    August 25, 2022
United States v. Corey Samerson
**22 Cr. 73 (JFK)**

When he is eventually released, Mr. Samerson plans to relocate to Florida to
be with his daughter and for a fresh start.  He will be older and away from the
negative and toxic environment and people he came home to last year.  This time,
he has greater insight, "[U]nlike last time, I know what struggles I will be facing
when I get home. I know that even though I did not receive the treatment I needed
last time around, that is not an excuse for making the same mistake again. I hope
that I will get the treatment I need this time around, but if I don't, I know it will be
on me to take the initiative and seek those things out for myself. I am grateful to
have a family that loves me, and even though growing up it felt like there were
things that I couldn't share with them, I know that I have people in my corner to
support me when I need them." Id.

## Conclusion

For the reasons set forth herein, a total sentence of 60 months followed by a
term of supervised release will adequately reflect the serious nature of the offense
and provide sufficient punishment, deterrence, and rehabilitation.

Respectfully submitted,

/s/ *Amy Gallicchio*

_____
Amy Gallicchio
Assistant Federal Defender
Federal Defenders of New York
212-417-8728

Cc:    AUSA Maddison Reddick Smyser
        AUSA Matthew J. C. Hellman